UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CRIMINAL ACTION NO. 5:16-CR-20-TBR

UNITED STATES OF AMERICA,                                                            PLAINTIFF

v.

JEFFREY DESMOND CARTER,                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Jeffrey Desmond Carter's Motion to Withdraw Plea, [R. 58]. The United States of America has responded, [R. 59]. This matter is now ripe for adjudication. For the following reasons, Carter's Motion to Withdraw Plea, [R. 58], is GRANTED.

**BACKGROUND**

On October 18, 2016, Carter was indicted on 27 counts, including production of child pornography, receiving child pornography, and sex trafficking of children. [*See* R. 4 (Indictment).] On August 23, 2017, Carter entered pleas of guilty as to Counts 1-15, Counts 19-23, and Counts 25-27 of the Indictment, and Carter entered pleas of nolo contendere as to Counts 16-18 and Count 24 of the Indictment at a hearing in front of Magistrate Judge King. [R. 32 at 2 (Change of Plea Order); R. 34 (Change of Plea Hearing Transcript).] On March 23, 2018, an oral motion to withdraw by defense counsel, Donald J. Meier and Laura R. Wyrosdick, was granted, and new counsel, David T. Bundrick, was appointed for Carter. [R. 53 (In Person Further Proceedings Order).] On June 29, 2018, Carter filed the Motion to Withdraw Plea, [R. 58], that is currently before the Court. On July 29, 2018, an evidentiary hearing was held in front of Senior

1

Judge Russell concerning Carter's Motion to Withdraw Plea. Defendant Carter was the only witness to testify.

## LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B): "A defendant may withdraw a plea of guilty or nolo contendere after the court accepts the plea, but before it imposes sentence if: the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In the Sixth Circuit, as in other circuits, a multi-factor balancing test has been developed to guide district courts in deciding whether to grant a motion to withdraw a guilty plea. The factors in this circuit are the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood,* 549 F.3d 1049, 1052 (6th Cir. 2008) (citing *United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994), *superceded on other grounds as recognized in United States v. Caseslorente,* 220 F.3d 727, 734 (6th Cir.2000)). "No one factor controls; the list is general and nonexclusive. *United States v. Bazzi,* 94 F.3d 1025, 1027 (6th Cir.1996)). The relevance of each factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the motion to withdraw.' *United States v. Triplett,* 828 F.2d 1195, 1197 (6th Cir.1987). Plea withdrawals should generally not be allowed where a defendant has made 'a tactical decision to enter a plea, wait[ed] several weeks, and then . . . believes he made a bad choice in pleading guilty.' *United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991) (quoting *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984)). Rather, Rule 11(d)(2)(B) is

designed 'to allow a hastily entered plea made with unsure heart and confused mind to be undone . . . .' *Alexander,* 948 F.2d at 1004." *Id.* at 1052–53.

## DISCUSSION

Carter argues that the Court should "set aside his pleas of guilty and nolo contendere, enter not guilty pleas, and schedule this matter for trial." [R. 58 at 1 (Motion to Withdraw Pleas).] Both parties argue that the seven-factor test cited above weighs in their favor. The Court will address each factor in turn.

**1. The amount of time that elapsed between the plea and the motion to withdraw it**

In his Motion to Withdraw, Carter states "Mr. Carter's abortive sentencing hearing on February 21, 2018 took place approximately 183 days after his change of plea hearing." [R. 58 at 3.] This calculation differs from the language of the test. Specifically, the first factor of the test calls for the amount of time between the plea and the motion to withdraw it. Carter pleaded guilty and nolo contendere to several counts on August 23, 2017 and filed this Motion to Withdraw Pleas on June 29, 2018. As the United States points out, this would add up to 310 days, or roughly ten months. However, this calculation is skewed by the fact that Carter's original counsel, Donald J. Meier and Laura R. Wyrosdick, withdrew as of March 27, 2018, [R. 53 at 1], and Carter's newly appointed counsel, David T. Bundrick, understandably required time to acquaint himself with the case. Considering the additional circumstances of Carter's confusion about his plea and disappointment with his original counsel, the Court finds that this factor weighs in favor of granting Carter's Motion to Withdraw Plea.

**2. The presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings**

Carter contends that due to his lack of experience with the legal system he did not understand "the need for haste in seeking to set aside the plea." [R. 58 at 3.] Furthermore, he implies that "the adequacy of his appointed counsel and [lack of] resources to hire other counsel" also contributed to his failure to move for withdrawal earlier in the proceedings. [Id.] Carter further explains his confusion due to his lack of experience later in the Motion, but this occurs in the context of the fourth factor. The United States responds that this excuse of lack of experience "rings hollow." [R. 59 at 4-5.] Additionally, the United States argues "if Carter was unaware of how the sentencing guidelines would affect his sentence at the time of his plea, one presumes he would have been made fully aware of his guideline range in October of 2017 when the original PSR was filed in the case." [Id.] This seems to be more fitting for discussion under the fourth factor as well, as most case law discusses a defendant's confusion or lack of understanding in that context.

The Sixth Circuit previously recognized a defendant's reason for delay as valid when the defendant claimed there was a breakdown in communication between himself and counsel and "the defendant had (1) clearly indicated that he would file a motion to withdraw, and (2) filed two pro se letters explaining that his first two court-appointed attorneys had failed to file motions to withdraw per his specific and repeated requests." *United States v. Collins*, 311 F. App'x 741, 744 (6th Cir. 2008); see also *United States v. Osborne*, 565 F. Supp. 2d 927, 933 (E.D. Tenn. 2008) (holding that the second factor weighed in defendant's favor when defendant provided a letter from his attorney proving that he asked his attorney to file a motion to withdraw his plea prior to the actual date the motion was filed).

Here, as Carter testified at the hearing concerning his Motion to Withdraw Plea, Carter alleges that his attorney never informed him that filing a motion to withdraw his plea was an

option. With this information before it, the Court finds it disingenuous to fault Carter for his lack of action in comparison to the defendants of *Collins* or *Osborne*. Thus, the Court finds this factor weighs in favor of granting Carter's motion.

### 3. Whether the defendant has asserted or maintained his innocence

Carter contends that "he has repeatedly denied any memories of the conduct underlying some of the counts" and he "questioned whether his conduct rises to the level of constituting an offense." [R. 58 at 4.] At the Change of Plea Hearing on August 22, 2017, Carter stated that he did not recognize victims 7, 8, and 11. [R. 34 at 53-55.] Also, at the hearing, Carter criticized the notion that his behavior rose to the required conduct of some of the counts. For example, in response to discussion of certain claims of production of child pornography, Carter expressed criticisms such as "I don't really understand how people can come at me asking me for favors and I'm being held accountable for every single action even though I don't know some of these people and they would contact me," [R. 34 at 44], and "I can't remember every day of my life, so I'm just agreeing to it, because I don't know exactly what day what happened," [*Id*. at 48]. The United States retorts that Carter "has never truly asserted or maintained his innocence," only disputed details such as the volume of child pornography found on his devices or the number of victims he communicated with. [R. 59 at 5.]

At the most recent hearing for his Motion to Withdraw Plea, Carter furthered the narrative that he did not understand that his actions were illegal. More importantly, he maintained that he was not guilty of certain counts, but he did not name one specifically. Granted, assertions on their own, without "any specific facts to support his alleged innocence," were previously rejected by the Sixth Circuit. *Collins*, 311 F. App'x at 744 (rejecting defendant's assertion of innocence when he filed a motion to withdraw due to the fact that he previously

5

pleaded guilty twice and he failed to provide specific facts supporting his innocence). However, Carter's situation seems different to that of *Collins* in that he has only pleaded guilty once, and, allegedly, that was due to the advice of counsel he now contends was inadequate. Therefore, the Court finds that the third factor is at least neutral.

**4. The circumstances underlying the entry of the guilty plea**

Carter's arguments in support of his Motion mainly fall under the fourth factor. Beyond the general complaint that the plea hearing was "lengthy and convoluted," Carter contends that, at the time he entered his pleas, (1) he did not understand the elements of the offenses with which he was charged, (2) he did not understand the application of the sentencing guidelines to his case, (3) he did not understand the process of PSR preparation, and (4) he implies his appointed counsel was inadequate.

    **a. He did not understand the elements of the offenses with which he was charged**

Carter argues that he displayed "a lack of understanding of the elements of the offenses with which he is charged" at the plea proceedings. [R. 58 at 6.] Carter lists three instances from the plea hearing when he appeared to debate whether his conduct matched what was required under a claim for production of child pornography. Upon discussion of whether Carter paid a victim to engage in sex acts and that he filmed those sex acts, he stated: "I didn't necessarily pay them just for that, Your Honor. I just gave them money for doing it, for just being my friend." [R. 34 at 17.][1] Before this statement, the court allowed Carter to confer with his attorney about the count, and, subsequently, Carter pleaded guilty. [*Id.* at 15-16.] Secondly, Carter recalls that when the court asked how he would plead to Counts 13-15, he stated:

> I don't really understand -- this is my first time being in any legal trouble, Your
> Honor, and I don't really understand how people can come at me asking me for

---

[1] Carter also claims in his Motion that the statutory language of "using" a minor to engage in sexual conduct should be interpreted by a jury.

> favors and I'm being held accountable for every single action even though I don't know some of these people and they would contact me.

[*Id*. at 44.] After this statement, the court ordered a recess to give Carter an opportunity to discuss possible defenses to the counts with his attorney. [*Id*.] After consulting with his attorney over a thirty-minute recess, Carter stated that he wanted to proceed, and he pleaded guilty to Counts 13-15. [*Id*. at 45-46.] Finally, Carter quotes his response to the court's question of whether he admitted to the conduct involved in Count 26, i.e., paying for and recording sexual conduct with a minor: "Yes, sir, Your Honor, but I didn't necessarily -- she had asked me for -- she said she just had a baby and needed help with buying diapers and et cetera. That's why I gave her that, because she told me she needed help." [*Id*. at 63-64.] After this statement, the court asked Carter whether he knew the victim was under the age of eighteen and whether he admitted to giving her money. [*Id*.] Carter answered yes to both questions. [*Id*. at 64.]

The Sixth Circuit addressed a similar argument concerning a motion to withdraw a guilty plea in *United States v. Wright*, in which the defendant alleged that "at the time he pled guilty to the offenses charged against him, he had not read the plea agreement and did not understand the elements of the offenses which the government would have had to prove." 225 F.3d 660, at *2 (6th Cir. 2000) (unpublished). There, the court found that a transcript of the magistrate judge's interview with the defendant and counsel at the time of the plea showed that "defendant answered in the affirmative that he had been counseled concerning the offenses charged against him, including being counseled concerning what the prosecution would be forced to prove in order to prevail at trial . . . ." *Id*. Furthermore, the court found that the defendant "failed to offer any evidence which would indicate that he did not understand his guilty pleas beyond his own statement . . . ." *Id*. After additionally recognizing that the defendant waited seven months to file

7

a withdrawal plea, he did not maintain his innocence, and there was prejudice to the government, the court denied the defendant's motion to withdraw his plea of guilty. *Id*.

The Sixth Circuit encountered another circumstance similar to the one at hand in *United States v. Murray*, in which the court found that the fourth factor weighed against granting the defendant's motion to withdraw his guilty plea even though the defendant responded to the court's question of whether he understood the charges against him with: "a majority." 66 F. App'x 600, 605 (6th Cir. 2003). The defendant claimed his response illustrated that "his plea was made in haste." *Id*. However, the Court disagreed because the record showed that, after his response, "the district court carefully inquired as to what portion of the charges Defendant did not understand, and carefully explained the charges to Defendant." *Id*. Furthermore, after explaining the charges, "the court inquired as to whether Defendant had any further questions, to which Defendant responded 'no.'" *Id*.

Although the Court finds no fault with the Magistrate Judge's handling of the hearing, the truth of the matter is that Carter clearly and consistently asserted his confusion over his charges throughout the original plea hearing. Even after consulting with his attorney, Carter did not seem to understand his situation with the clarity of the defendants in *Wright* and *Murray*.

**b. Inadequate counsel**

In addition, Carter's assertion that he did not understand the application of the sentencing guidelines or the process of PSR preparation seem to merge with his dissatisfaction with his appointed counsel. Carter states that he believed "by entering pleas his sentencing guidelines would be meaningfully reduced," yet he still faces a guideline sentence of life imprisonment. [R. 58 at 4.] He explains that "his prior counsel advised him that he would receive a life sentence if he lost at trial" but "[i]f he had understood that a life sentence was not an automatic outcome

8

from conviction at trial, Mr. Carter would not have entered the pleas." [*Id*. at 5.] Carter repeated this narrative at his Motion to Withdraw Plea hearing as well. Furthermore, Carter contends that "his previous counsel did not obtain potentially exculpatory evidence" and Carter believed "that without such evidence he could not prevail at trial." [*Id*.] In response, the United States notes that, under oath, Carter was able to explain his understanding of the purpose of the hearing by stating that he was "taking a plea in order to have a lesser of a sentence possibly than taking it to trial," [R. 34 at 6-7]. Moreover, the United States notes that Carter agreed that his counsel gave him the advice needed to make his plea. [*Id*. at 8.]

There are two cases within the Sixth Circuit involving similar situations to the matter at hand. First, in *Collins*, the appellant argued that the absence of his inability to reach his appointed counsel and the erroneous sentencing advice of an investigator at the Federal Defender Services caused him to be confused about his plea and its consequences. 311 F. App'x at 744. There, the appellant pleaded guilty to being a convicted felon in possession of ammunition and signed a written plea agreement. *Id*. at 742. The Sixth Circuit found that even if there was some confusion, there was enough evidence on the record proving that the appellant understood the plea and its consequences. That evidence included: testimony from a Federal Public Defender paralegal that she discussed the applicable sentencing guidelines and his status as an armed career criminal with the appellant, and he understood the consequences of pleading guilty; the transcript from the appellant's plea colloquy in which the district court judge inquired into the appellant's understanding of the charges and possible penalty, advised the appellant of the role of the applicable sentencing guidelines, and the prosecution explained the repercussions of being an armed career criminal; and the appellant's testimony that he understood the charges, the terms of the plea agreement, and the rights he was giving up by pleading guilty. *Id*. at 745.

Second, and in contrast to *Collins*, the Eastern District of Tennessee held the fourth factor weighed in favor of granting a motion to withdraw a guilty plea to various drug and firearm offenses in *Osborne* when the defendant argued "his counsel gave misleading advice about the potential effect the plea would have on sentencing, counsel failed to investigate the sufficiency of the evidence, and defendant did not voluntarily and intelligently enter into the plea." 565 F. Supp. 2d at 935. The court noted that "[m]isadvice of counsel may be a sufficient basis for permitting the withdrawal of a guilty plea," *Id*. (citing *Brown v. Perini*, 718 F.2d 784, 789 (6th Cir.1983)), and that "affirmative misstatements of the maximum possible sentence are sufficient to invalidate a guilty plea if the misstatements are material to defendant's decision to plead guilty," *Id*. (quoting *Pitts v. United States*, 763 F.2d 197, 201 (6th Cir.1985)). The defendant argued that, after further studying the law, he was no longer satisfied with the advice of his attorney because his attorney did not inform him of possible increases in his sentence, misinformed him about the elements of the crime, did not investigate all of the facts pertaining to the charge, and did not tell him that he could get a reduction in his sentence for acceptance of responsibility even if he went to trial. *Id*. at 936-37. The defendant's previous counsel testified that he was not sure if he informed the defendant about certain possible increases to his sentence. *Id*. The court found that the defendant "cast reasonable doubt as to whether his plea was entered knowingly, voluntarily, and intelligently," and, though the court took precautions to ensure the defendant understood the situation, the record revealed that the "defendant may not have been aware of the law as it applied to him as he answered the Court's questions." *Id*.

The Court finds the matter at hand to be more like that of *Osborne* than *Collins*. Although the Magistrate Judge took precautions to ensure the defendant understood the situation, Carter consistently stated in both hearings that he did not properly understand the application of the

sentencing guidelines or his charges in general. Thus, like in *Osborne*, Carter "may not have been aware of the law as it applied to him as he answered the Court's questions." 565 F. Supp. 2d at 936-37. Upon considering Carter's claims that he did not understand the charges against him and his claim of inadequate counsel, the Court finds that the fourth factor weighs in favor of granting Carter's Motion to Withdraw Plea.

5. **The defendant's nature and background**

Carter argues that "[n]othing about his prior life prepared Mr. Carter to make complicated legal assessments which could lead to life imprisonment." [R. 58 at 4.] The United States retorts that there is no evidence Carter "possesses less than average intelligence or that he was unable to comprehend the charges against him." [R. 59 at 6-7.] Furthermore, the United States notes that Carter completed "some 12 hours of college coursework at Murray State University," had significant prior military service, and was employed for ten years at a dairy processing facility. [*Id*.]

In *Collins*, the appellant had only an eighth-grade education, yet the Sixth Circuit found that "nothing in the record suggests he did not comprehend the charges against him . . . ." 311 F. App'x at 746. In contrast, in *Osborne*, the Eastern District of Tennessee reviewed a report from a forensic psychologist and determined that "defendant's cognitive, behavioral, and emotional qualities support defendant's assertions that he did not understand the law as it applied to the facts of his case at the time he entered his guilty plea." 565 F. Supp. 2d at 938. Here, Carter possessed much more than an eighth-grade education and presented no evidence showing that his "cognitive, behavioral, and emotional qualities" support his claim that he did not understand the law as it applied to his case. Thus, this factor weighs against granting Carter's Motion to Withdraw Plea.

11

6. **The degree to which the defendant has had prior experience with the criminal justice system**

Both parties agree that Carter has little to no history with the criminal justice system. Thus, this factor weighs in favor of granting Carter's Motion to Withdraw Plea.

7. **Potential prejudice to the government if the motion to withdraw is granted**

Under the final factor, Carter briefly argues that "[t]his case has already been pending for years. The additional time which has elapsed since the entry of the plea does not prejudice the government, particularly because so much of the evidence is documentary in nature. The government also objected to acceptance of the plea." [R. 58 at 4.] The United States responds with the argument that the "victim-witnesses have repeatedly moved and will be difficult to locate, and it is not outrageous to believe that their memories of these events fade between each delay." [R. 59 at 7.] The Court finds that this factor likely weighs against granting Carter's Motion to Withdraw Plea.

In summary, when considering this list of general factors as a whole, the Court finds that Carter entered his plea with a "confused mind," rather than making a "tactical decision to enter a plea." The confusion surrounding his charges and the allegations of inadequacy of counsel were especially put on display during both hearings, and they were clearly relevant in Carter's failure to move to withdraw his plea at an earlier date. Furthermore, the Court notes that Carter has no prior experience with the criminal justice system. Thus, the Court finds that the factors of the *Bashara* balancing test weigh in favor of granting Carter's Motion to Withdraw Plea.

**CONCLUSION**

In sum, the Court finds that the seven-factor balancing test weighs against granting Carter's Motion to Withdraw Pleas. **IT IS HEREBY ORDERED**: Defendant Jeffrey Desmond Carter's Motion to Withdraw Plea, [R. 58], is **GRANTED**.

**IT IS SO ORDERED**.


cc: Counsel of Record