UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CRIMINAL ACTION NO. 5:16-CR-20-TBR

UNITED STATES OF AMERICA, PLAINTIFF

v.

JEFFREY DESMOND CARTER, DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jeffrey Desmond Carter's Motion to Suppress, [R. 77]. The United States of America ("the Government") responded, [R. 80], and Carter replied, [R. 81]. Counsel agreed that a hearing on the Motion to Suppress was not necessary. [R. 79]. Fully briefed, this matter is ripe for adjudication. For the reasons stated herein, Carter's Motion to Suppress, [R. 77], is DENIED.

## BACKGROUND

On February 6 and 10 of 2015, three different search warrants issued, which are the subject of the Motion to Dismiss before the Court. On February 6, 2015, Detective Mike Robinson of the Murray Police Department presented an Affidavit for Search Warrant to Calloway County District Judge Randall Hutchens (hereinafter "the First Warrant"). [R. 77-2 at 2.] The affidavit requested a search warrant of "Facebook Attn: Legal Department" at 156 University Avenue Palo Alto, CA 94301." The affidavit requested to search "[a]ny and all information including but not limited to IP address, messages, photos and videos sent to and from the facebook account 'Adam Bryan' . . . ." In the affidavit, Detective Robinson stated that he received information from another officer at the Murray Police Department that "a 14 year old female juvenile had reported sending sexually explicit photos and video" to the Facebook page at

1

issue by direct message. [R. 77-2 at 3.] After speaking with the other officer, Detective Robinson interviewed the juvenile and averred:

> [S]he reported that in or around December 2014 she was contacted via direct message from http://www.facebook.com/adam.bryan.31. The juvenile reported that the message asked her if she was wanting to make some money and told her he would pay her if she would send sexually explicit pictures. The juvenile stated she agreed and sent approximately 10 digital photographs and a video. The juvenile reported the photos and video showing her naked breast and vagina.

[*Id.*] On February 6, 2015, Judge Hutchens issued a search warrant for "[a]ny and all information including but not limited to IP address, messages, photos and videos sent to and from the [F]acebook account 'Adam Bryan' . . . ." [R. 77-2 at 4.] The search warrant was executed that same day. [*Id.* at 5.]

On February 10, 2015, Detective Robinson presented another Affidavit for Search Warrant to Judge Hutchens, this time for "Murray Electric System" at "401 Olive St. Murray, Ky." [R. 77-3 at 4 (hereinafter "the Second Warrant").] The affidavit requested to search "[a]ny and all account information with IP address 72.14.108.33 including but not limited to name of account holder, address, date of birth and any other identifying information associated with the account." [*Id.*] In the affidavit, Detective Robinson stated that he received information from another officer at the Murray Police Department that "a 14 year old female juvenile had reported sending sexually explicit photos and video to the Facebook page of an individual identifying their self as Adam Bryan." [*Id.* at 5.] Detective Robinson also averred that he interviewed the juvenile on February 6, 2015:

> [S]he reported that in or around December 2014 she was contacted via direct message from Adam Bryan the juvenile provided me with screen shots of some of the messages between the two. During the Investigation I was able to determine the facebook address of the suspect to be https://www.facebook.com/adam.bryan.31 by direct message. The juvenile reported that the message asked her if she was wanting to make some money and told her he would pay her if she would send sexually explicit pictures. The

2

> juvenile stated she agreed and sent approximately 10 digital photographs and a video. The juvenile reported the photos and video showed her naked breast and vagina.
> After serving a search warrant on https://www.facebook.com/adam.bryan.31 and receiving and reviewing the response from [F]acebook I observed the subject was using multiple IP address[e]s Including 72.14.108.33 which I confirmed to be a local address from Murray Electric System. I also observed a private message between the reporting juvenile and the owner of the [F]acebook account. Multiple photos of the reporting juvenile with at least one of the photo showing the juvenile unclothed were also included in the messages.

[*Id.*] On February 10, 2015, Judge Hutchens issued a search warrant corresponding with the affidavit. [R. 77-3 at 2.] The search warrant was executed that same day. [*Id*. at 3.]

Also occurring on February 10, 2015, Detective Robinson presented an Affidavit for Search Warrant to Judge Hutchens for personal property at a specific address on Miller Avenue in Murray, Kentucky, in two specified vehicles, and on the person of Jeffrey Carter. [R. 77-4 at 3 (hereinafter "the Third Warrant").] The affidavit requested to search:

> Computer Systems, [i]ncluding but not limited to system components, cellphones, [i]nput devices, output devices, data storage devices, data transmission devices, network and applications downloaded onto any device seized . . . and computer media; and other material relating to computer systems and the Internet including, but not limited to documentation, operating system software, application or access programs disks, manuals, books, brochures, or notes; and computer access codes, user names, log file, configurations files, and passwords; and any and all evidence related to ownership.

[R. 77-4 at 1.] In the affidavit, Detective Robinson provided the same information as in the Second Warrant, with a few additions. After describing the interview with the juvenile, Detective Robinson added: "The juvenile also stated she face timed with the person and stated the face time account was under jdcarter@icloud.com. A check of Kentucky driver's license showed a Jeffery D Carter residing at [redacted] Miller Avenue [i]n Murray, Kentucky." [*Id*. at 4.] Furthermore, after recounting the search warrant served on the Facebook account, Detective Robinson added: "After obtaining the information from [F]acebook I obtained a search warrant

3

for Murray Electric System for the IP address 72.14.108.33. Murray Electric System stated IP address 72.14.108.33 is currently in use by Jeffrey Carter at [redacted] Miller Avenue rear Apartment [i]n Murray, [w]hich is consistent with the juveniles statements." [*Id*.] That same day, a search warrant was issued and executed. [*Id*. at 1-2.] The warrant described the residence to be searched as:

> [redacted] Miller Avenue
> Murray, Kentucky 42071
> Starting at the Northwest of the court square travel west on Main Street for 1.1 miles to 16th Street. Turn right onto 16th Street Traveling north on 16th Street for .1 mile turning left onto Miller Avenue. Traveling west on Miller for .3 miles. [redacted] Miller is on the left south side of the roadway. [redacted] is a tan brick single story structure with white trim.

[*Id*. at 1.]

## DISCUSSION

Carter moves the Court to "exclude all evidence stemming from the searches in this case." [R. 77 at 1.] Carter arranges the arguments in his Motion to Suppress as they apply to each warrant. Therefore, the Court will discuss said arguments as they apply to each of the three warrants in turn.

### I. First Warrant

Defendant Carter argues that the First Warrant, which was for "[e]lectronic information including IP address, messages sent to and from the Facebook account of 'Adam Bryan'" was granted in violation of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2701, *et seq*. [R. 77 at 1.] Specifically, Carter argues that the ECPA requires that search warrants for the content of social media profiles must be signed by judges of general jurisdiction, yet the judge that signed the First Warrant in this action, the Honorable Randall Hutchens, was only of limited jurisdiction as a district court judge for the Commonwealth of Kentucky. [*Id*.] Carter concludes that this violation of the ECPA requires "all evidence stemming from it" to be

4

suppressed. [*Id*. at 5.] In response, the Government concedes that Judge Hutchens is a judge of limited jurisdiction, that he does not meet the definition of "court of competent jurisdiction" as it is used in the statute, and that this constitutes a violation of the ECPA. [R. 80 at 2.] However, the Government asserts that "the information sought and obtained by the First Warrant falls under what is referred to as Title II of ECPA, also known as the Stored Communications Act ("SCA"). See 18 U.S.C. §§ 2701-2712. Significantly, the SCA has no exclusion remedy." [*Id*.] Carter appears to agree with the Government's assessment, briefly stating in his Reply: "While ECPA does limit the remedies available for 'nonconstitutional violations' of ECPA, the Court should consider the violations of ECPA when deciding the other issues raised by Mr. Carter's motion to suppress." [R. 81 at 1.]

Beyond the parties in this case, district courts within the Sixth Circuit and several appellate courts also agree that the civil cause of action under § 2707 and the criminal penalties under § 2701(b) are the only judicial remedies available for a violation of the Stored Communications Act. *See United States v. Ledbetter*, No. 2:14-CR-127, 2015 WL 7758930, at *15 (S.D. Ohio Dec. 2, 2015), aff'd, 929 F.3d 338 (6th Cir. 2019) ("Indeed, because the Stored Communications Act omits suppression as a remedy and seemingly rules out such relief by stating that '[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for non-constitutional violations of this chapter,"'18 U.S.C. § 2808 (emphasis added), every Circuit to have considered the issue has rejected Ledbetter's argument.") (collecting cases); *United States v. Scott*, No. 14-20780, 2015 WL 4644963, at *6 n.6 (E.D. Mich. Aug. 5, 2015) (citing *United States v. Smith,* 155 F.3d 1051, 1056 (9th Cir. 1998) and *United States v. Guerrero,* 768 F.3d 351, 357–358 (5th Cir. 2014)) ("It is well recognized that the Stored Communications Act 'does not provide an exclusion remedy. It allows for civil

damages, and criminal punishment, but nothing more.'"). Therefore, the Court finds that Carter is not entitled to suppression of all evidence due to this violation.

**II.      Second Warrant**

Carter argues that the affidavit supporting the Second Warrant "depended entirely upon information obtained from the previous search warrant, which in turn taints the affidavit." [R. 77 at 5-6.] Therefore, Carter concludes that "the documents and information produced in reliance on that search warrant should be suppressed as fruits of the poisonous tree." [*Id.*] As the Court has held that this non-constitutional violation of the Stored Communications Act does not warrant exclusion of evidence, Carter's argument regarding the Second Warrant is without merit.

**III.     Third Warrant**

In regard to the third search warrant, Carter argues both that the warrant is "fruit of the poisonous tree from the previously identified unlawful search warrants" and that the search warrant should be suppressed for failing to describe the place to be searched with particularity. [R. 77 at 7.] As the Court has already held that Carter is not entitled to suppression of all evidence obtained pursuant to the First Warrant, the Court, once again, finds Carter's "fruit of the poisonous tree" argument to be without merit. This leaves the issue of whether the search warrant described the place to be searched with sufficient particularity to be decided by the Court.

The Fourth Amendment to the United States Constitution requires search warrants to particularly describe the place to be searched. *United States v. King,* 227 F.3d 732, 750 (6th Cir. 2000). There is a two-part test for determining whether the description in a warrant is sufficient to satisfy the particularity requirement: "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may

be mistakenly searched." *Id.* Carter argues that the Third Warrant "clearly authorizes a more general search than justified by the information known to the officers – a search of an entire home, rather than an apartment." [R. 77 at 7.] In response, the Government asserts that the Court may properly look to the affidavit attached to the search warrant, which, amongst other things, described the place to be searched as the "rear apartment." [R. 80 at 6.] In his Reply, Carter retorts that the Court should not consider the supporting affidavit to the search warrant because the search warrant did not adequately incorporate the affidavit. [R. 81 at 3-4.] As consideration of the affidavit is a threshold issue to the issue of particularity, the Court will first consider whether the search warrant adequately incorporated the affidavit, followed by the issue of particularity.

### A. Incorporation of the Affidavit

The Sixth Circuit has recognized that "even though the search warrant itself lacks sufficient particularity regarding the place to be searched or the persons or items to be seized, such warrant may still yield a constitutionally valid search based on the principle of 'cure by incorporation.'" *Sanders v. Parrish*, 141 F. App'x 412, 415 (6th Cir. 2005). As the Sixth Circuit adopted in *United States v. Blakeney*, "in order for an affidavit to be viewed as limiting the scope of a warrant, the warrant must 'not only attach the affidavit, but must also contain "suitable words of reference" evidencing the magistrate's explicit intention to incorporate the affidavit.'" *Blakeney*, 942 F.2d 1001, 1025–26 (6th Cir. 1991) (quoting *United States v. Maxwell,* 920 F.2d 1028, 1032 (D.C. Cir. 1990)). Here, Carter only asserts that the warrant did not contain "suitable words of reference," arguing that the reference was "boilerplate" and "pre-printed." [R. 81 at 4.] Specifically, the warrant at issue stated:

> Proof by affidavit having this day been made before me by: Detective Michael
> Robinson a peace officer of Murray Police Department, that there is probable and

7

>reasonable cause for the issuance of this Search Warrant as set out in the *affidavit attached hereto and made a part hereof as if fully set forth herein* . . . .

[R. 77-4 at 1 (emphasis added).] In *Sanders v. Parrish*, the Sixth Circuit found that a search warrant incorporated the attached affidavit on its face when the warrant included the words: "that there is probable and reasonable cause for the issuance of this Search Warrant as set out in the affidavit attached hereto and made a part hereof as if fully set forth herein." *Sanders*, 141 F. App'x at 417. As that is the exact same language as used in the warrant at issue, the Court will follow the precedent of the Sixth Circuit and hold that the search warrant incorporated Detective Robinson's affidavit on its face.

### B. Particularity Analysis

Considering the information contained in the attached affidavit, the Court finds that the search warrant described the place to be searched with sufficient particularity. As explained above, in determining whether the description in a warrant is sufficient to satisfy the particularity requirement, the Court must consider: "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *King,* 227 F.3d at 750.

Regarding the first factor, Carter argues that the warrant did not make clear that there were two residences at the listed address. [R. 81 at 3.] However, as emphasized by the Government, the affidavit of Detective Robinson specifies that Carter lived in the "rear apartment" of the residence. [R. 77-4 at 4.] The Court finds that this implies more than one residence. Also, the Court notes that the Sixth Circuit faced a similar situation to the one at hand in *United States v. Wilson*, in which the defendant argued that the warrant at issue failed to describe with particularity the location to be searched when the warrant inaccurately stated that

the location had a single common entrance. *Wilson*, 307 F. App'x 880, 882 (6th Cir. 2009). The Court disagreed, stating that "[a]lthough the warrant incorrectly stated that 1200 Webb has one common entrance, it stated that the area to be searched was the 'lower portion of the dwelling.'" *Id*. at 883. Moreover, the Sixth Circuit noted that the warrant "also accurately stated the address of the location, the cross-streets, and the side of the street on which 1200 Webb is located" and the affiant officer, who knew that the residence to be searched was downstairs, briefed the officers in advance and participated in the search. *Id*. Similarly, in the case at hand, Detective Robinson's affidavit accurately stated that Carter lived in the "rear apartment," and the warrant stated the address of the location, provided specific directions to the location, and provided a physical description of the building. [R. 77-4 at 3-4.] The Court finds that, considered together, the affidavit and warrant made clear that there were two residences at the listed address and described with sufficient particularity the place to be searched so as to enable the executing officers to locate and identify the premises with reasonable effort.

Regarding the second factor, the Government argues that beyond the accurate description of the residence, the fact that the affidavit and warrant "both reference Jeffrey Carter as the user of the IP address at issue, and as a person to be searched" and that Detective Robinson, the affiant, was present during the execution of the search warrant further assist the conclusion that the description was sufficient and "eliminate[d] any reasonable possibility that another premises might be mistakenly searched." [R. 80 at 6.] In support, the Government cites the Sixth Circuit's findings in *United States v. Durk*, in which the Sixth Circuit held that additional circumstances made clear that inaccuracies in the warrant would not lead to a mistaken search of the premises. *Durk*, 149 F.3d 464, 466 (Sixth Cir. 1998). Specifically, in *Durk*, those "additional circumstances" involved the affidavit incorporated in the warrant specifying that the defendant

9

was the tenant in the residence to be searched and the executing officer was also the affiant. *Id*. Similarly, here, the affidavit stated that Carter, the person to be addressed, resided in the rear apartment, and the parties do not dispute that the affiant officer, Detective Robinson, was present during the execution of the search warrant. [R. 80 at 6; R. 81 at 3.]

In retort, Carter argues that Detective Robinson's presence at the execution of the search warrant does not "ameliorate[] the defects in the warrant." [R. 81 at 3.] In support of this assertion, Carter claims that such a scenario was rejected by the United States Supreme Court in *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). However, Carter's reliance on *Groh* in this situation is misguided. In *Groh*, the Supreme Court held that the search warrant at issue was obviously deficient because "the warrant did not describe the items to be seized *at all*." *Id*. at 558. Rather, the space on the warrant set aside for a description of the items to be seized merely provided a description of the respondents' house. *Id*. As quoted by Carter, the Court stated that "[b]ecause petitioner did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly 'unreasonable' under the Fourth Amendment." *Id*. at 563. In contrast to *Groh*, the warrant at issue in this case did describe the items to be seized. [R. 77-4 at 1 (listing items to be seized).] Furthermore, the Court finds this portion of *Groh* to be irrelevant to the argument that Detective Robinson's presence at the execution of the search warrant could aid in preventing a mistaken search of the premises. Therefore, the Court finds this argument from Carter to be without merit.

In conclusion, the Court finds that the search warrant described the place to be searched with sufficient particularity. Therefore, suppression of evidence is not an appropriate remedy, and Carter's Motion to Suppress, [R. 77], is DENIED.

**C. Good Faith Reliance**

As the Court has held that the search warrant complies with the requirements of the Fourth Amendment, it need not consider the Government's alternative argument that the good faith exception applies to this case. *See Durk*, 149 F.3d at 466.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Carter's Motion to Suppress, [R. 77], is **DENIED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 22, 2019

cc: Counsel of Record